IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Jaron Green,<br><br>                 Plaintiff,<br><br>v.<br><br>City of Chicago, a municipal corporation, by and through its authorized agents and employees, Detective Patrick McDonagh, Detective Patrick Deenihan, Detective Rolando Rodriguez, and Detective John Hanichak,<br><br>                 Defendants. | Case No.: 1:23-cv-01841 |

**Complaint at Law**

Now Comes the Plaintiff, Jaron Green, by and through his attorneys, Taxman, Pollock, Murray & Bekkerman LLC, and Cheronis, Parente & Levitt, and complaining of Defendants City of Chicago, Detective Patrick McDonagh, Detective Patrick Deenihan, and Detective Rolando Rodriguez, and alleges as follows:

**Jurisdiction and Venue**

1. This is an action for damages brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff Jaron Green's ("Green" or "Plaintiff") rights as secured by the United States Constitution and under the laws of the State of Illinois.

2. This court has original jurisdiction pursuant to 28 U.S.C. §§§ 1331 and 1343 over Plaintiff's cause of action arising under the Constitution of the United States pursuant to 42 U.S.C. § 1983.

3. This court has supplemental jurisdiction of Plaintiff's causes of action arising under the Illinois state law pursuant to 28 U.S.C. § 1367.

4. Venue is proper under 28 U.S.C. § 1391(b), in that all of the claims and events giving rise

to this action occurred in this district.

## Parties

5. At all relevant times, Plaintiff Jaron Green was a resident of Chicago and the State of Illinois.

6. At all relevant times, Defendant City of Chicago ("City") was a municipal corporation maintaining, as a division of said municipal corporation, a certain police department, commonly referred to as the Chicago Police Department.

7. At all relevant times, Defendant City was a municipal corporation duly incorporated under the laws of the State of Illinois and was the employer and principal of Defendant Sergeant Patrick McDonagh ("McDonagh"), Defendant Detective Patrick Deenihan ("Deenihan"), and Defendant Detective Rolando Rodriguez ("Rodriguez") (Collectively "Individual Defendants").

8. The City is responsible under *respondeat superior* for the actions of its agents, including, but not limited to Defendant McDonagh, Defendant Deenihan, and Defendant Rodriguez involvement in the investigation, detainment, arrest, and prosecution of Plaintiff.

9. At all relevant times referenced herein, Defendant McDonagh, Defendant Deenihan, and Defendant Rodriguez, were employed by the City of Chicago as sworn police officers. The Defendant officers are being sued in their individual capacity and official capacity. At the time of the incidents in this complaint, the Defendant officers were engaged in the conduct complained of while acting within the scope of their employment and under the color of law.

## Facts Applicable to All Counts

### Incident

10. On May 18, 2011, at approximately 10:00 a.m., an unknown assailant shot and killed Bruce Lee ("Lee") at approximately 758 N. Avers Avenue, near the intersection of Chicago Avenue and

Avers Avenue in Chicago, Illinois. Lee died from his wounds on May 18, 2011, at approximately 10:45 a.m.

11.     There were five shell casings and two glass bottles recovered from the scene. The shell casings and bottles were tested by the Illinois State Police for fingerprints. Green's fingerprints were not recovered from the shell casings or bottles.

12.     There was no physical or DNA evidence indicating that Green was at the scene of the crime.

13.     There was no evidence produced at trial indicating that Green had any motive to harm Lee - let alone murder him in cold blood.

14.     Green has always maintained his innocence and has never made a statement that could be considered incriminating.

15.     On May 18, 2011, at approximately 10:00 a.m., CPD Sergeant Nellie Harb received a radio dispatch stating a shooting had occurred near Chicago Ave. and Avers Ave. Upon arriving at the scene, Sgt. Harb approached Lee and asked him what had happened before Lee responded that he had been shot. Sgt. Harb also asked Lee to identify his shooter, but Lee was unable to do so.

16.     An Assistant Cook County medical examiner performed an autopsy on Lee. The medical examiner determined that the shooting occurred at a close range.

17.     Upon information and belief, Lee had known Green for several years prior to the shooting. However, despite Lee knowing Green for several years and Lee being shot at a close range, Lee did not identify Green as the shooter to Sgt. Harb.

18.     On May 18, 2011, at approximately 10:15 a.m., Defendants McDonagh and Deenihan were assigned to investigate Lee's murder and arrived on the scene shortly thereafter.

19. Defendants McDonagh and Deenihan were informed that a potential witness observed the offender armed with a handgun running south and then eastbound through the alley immediately south of Chicago Ave.

20. Defendants McDonagh and Deenihan proceeded to walk eastbound through the alley immediately south of Chicago Ave. and observed a camera mounted on the back of an apartment that faced the alley immediately south of Chicago Ave.

21. Defendants McDonagh and Deenihan viewed the video footage and observed a black male running eastbound through the alley immediately south of Chicago Ave. Defendants McDonagh and Deenihan realized the relevance and importance of the video and requested that a CPD evidence technician obtain a copy of the video footage.

22. Defendants McDonagh and/or Deenihan realized the video footage provided critical identifying factors of the suspect including his height, weight, clothing, complexion, hair, and facial appearance.

23. Defendants McDonagh and/or Deenihan realized the black male running through the alley *did not* look like Green. Defendants McDonagh and/or either purposely or recklessly failed to properly preserve this video footage.

24. Prior to trial, Defendant McDonagh and/or Deenihan never disclosed to Plaintiff or his attorney the video footage of the male back running eastbound through the alley immediately south of Chicago Ave. Defendants McDonagh and/or Deenihan clearly violated Plaintiff's due process rights to a fair trial by deliberately or recklessly withholding this exculpatory evidence in violation of *Brady v. Maryland,* 373 U.S. 83 (1963).

**Darian Broomfield**

25. On August 20, 2011, Darian Broomfield ("Broomfield") was arrested by CPD officers for felony possession of narcotics. In the three months after Lee's murder and prior to this arrest, Broomfield failed to come forward and identify Green as the alleged shooter.

26. Upon information and belief, the Individual Defendants were aware that Broomfield was a confidential informant that had provided false statements and/or testimony in the past. The Individual Defendants violated their *Brady* obligation by failing to disclose to Plaintiff or his attorney that Broomfield was a confidential informant that had provided false statements and/or testimony in the past.

27. On August 20, 2011, Defendants McDonagh and Deenihan interviewed Broomfield and observed him to be under the influence of various narcotics including phencyclidine ("PCP"). Defendants McDonagh and Deenihan knew Broomfield's impaired state made his statements unreliable and rendered him susceptible to coercion.

28. Defendants McDonagh and Deenihan violated their *Brady* obligation by failing to disclose to Plaintiff or his attorney that Broomfield was under the influence of various narcotics including phencyclidine ("PCP").

29. On August 20, 2011, Defendants McDonagh and Deenihan threatened Broomfield with physical violence and incarceration if he failed to falsely identify Green as the shooter. Defendants McDonagh and Deenihan also promised Broomfield that his felony narcotics charges would be dismissed if he falsely identified Green as the shooter.

30. Defendants McDonagh and Deenihan violated their *Brady* obligation by failing to disclose to Plaintiff or his attorney that they threatened Broomfield with physical violence and incarceration if he failed to falsely identify Green as the shooter.

31. On or around August 20, 2011, Defendants McDonagh and Deenihan released Broomfield.

32. On May 17, 2013, Defendants Rodriguez and Hanichak traveled to Broomfield's place of work and threatened that Broomfield would lose his job if he failed to accompany them to the police station. Upon arrival, Defendants Rodriguez and Hanichak again threatened Broomfield and coerced him to falsely identify Green as the shooter in a photo-array and through a written statement.

33. Defendants Rodriguez and Hanichak violated their *Brady* obligation by failing to disclose to Plaintiff or his attorney that they had threatened Broomfield if he failed to identify Green as the shooter in a photo-array and through his written statement.

**Arrest and Trial**

34. On May 16, 2013, Green was arrested and subsequently charged with the murder of Lee.

35. On May 9, 2015, Green's case proceeded to a jury trial in Cook County, Illinois. Broomfield testified at trial and denied ever identifying Green as the shooter. In fact, The prosecution failed to present any other eyewitness testimony identifying Green as the alleged shooter.

36. The prosecution also presented the testimony of Larue Bey, a longtime resident of the neighborhood where the shooting took place. Mr. Bey testified that he was in his home when he heard several gunshots. At that time, Mr. Bey looked out his window and observed a four-door sedan that was "red or orange Bonneville-type" traveling eastbound on Huron Street approximately 10-15 mph over the speed limit. On cross-examination, Mr. Bey acknowledged that he was unsure of the make or model of the vehicle.

37. No other witnesses testified to observing the "red or orange Bonneville-type" vehicle. Moreover, none of the witnesses interviewed by the individual Defendants or other officers investigating the shooting mentioned observing this "red or orange Bonneville-type" vehicle.

38. The prosecution then introduced a certified copy of a vehicle record indicating that Green owned a 1998 Pontiac Bonneville. However, the vehicle record did not specify the color of Green's Bonneville.

39. On May 14, 2015, the jury found Green guilty of first-degree murder and personally discharging a firearm. On July 28, 2015, the trial court sentenced Green to a total of 51 years in the Illinois Department of Corrections.

**Post-Conviction**

40. On December 14, 2018, Green filed a Petition for Post-Conviction Relief pursuant to the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1. In relevant part, Green argued that newly discovered evidence regarding his vehicle warranted granting of the petition.

42. The newly discovered evidence revealed that the 1998 Bonneville was owned by a Sheri Demario at the time of the May 2011, shooting. Demario and Green have never met and have no affiliation. Moreover, the newly discovered evidence established that Green did not come into possession of his 1998 Bonneville until April 2013, and that he actually owned a 1995 Chevrolet Van in 2011. Finally, the newly discovered evidence established that Plaintiff's Bonneville was in fact green, and not the "red or orange" color described by Mr. Bey.

43. The newly discovered evidence was also presented directly to the Cook County State's Attorney's Office ("CCSAO"). At that time, the CCSAO faced the following reality: 1) there was no physical evidence linking Green to the crime scene, let alone the crime; 2) there was no evidence of motive; 3) the lone eyewitness presented at trial had thoroughly recanted his alleged

7

identification of Green; and 4) the eyewitness's identification of the suspect vehicle was entirely rebutted by the newly discovered evidence. Faced with this reality, the CCSAO had no objection to the trial court granting Green's Petition for Post-Conviction relief.

44. On March 24, 2022, the trial court granted Green's Petition for Post-Conviction Relief; the court vacated the verdict of guilty entered May 14, 2015; and the court acknowledged the CCSAO's decision to *nolle prosequi* any related charges against Green.

45. Green was released from custody on or around March 25, 2022.

46. As a direct and proximate result of the objectively unreasonable, willful, wanton, and malicious actions of the Defendants, Plaintiff suffered without limitation the following injuries and damages:

    a. Violation of his constitutional rights under the Fourth, Fifth, and Fourteenth Amendments;

    b. Loss of his physical liberty;

    c. Physical abuse;

    d. Psychological abuse and mental coercion;

    e. Mental and emotional trauma; and

    f. Monetary and economic loss.

47. At all relevant times, City of Chicago, through its Defendant agents involved in the arrest and prosecution of Plaintiff, knew or should have known that Plaintiff had not committed any acts for which he could be properly charged with attempt murder and aggravated battery with a firearm.

### Count I – Due Process violation for obtaining false statements/ filing false reports/Brady violations
### 42 U.S.C. § 1983

1-47. Plaintiff incorporates and realleges paragraphs 1-47 as paragraphs 1-47 of Count I.

48. As described more fully above, Defendants Detective Patrick McDonagh, Detective

Patrick Deenihan and Detective Rolando Rodriguez, while acting individually, jointly, and in conspiracy with other unnamed individuals, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial by the following:

    a.    Deliberately withheld exculpatory evidence including the video footage that either exonerated Plaintiff or implicated another individual as the shooter;

    b.    Deliberately withheld exculpatory evidence including eyewitness statements that either exonerated Plaintiff, materially impeached state witnesses, or implicated another individual as the shooter;

    d.    Deliberately provided information to witnesses that was beyond their personal knowledge in an attempt to bolster their statements including the alleged identity and location of the shooter;

    e.    Deliberately fabricated reports and other evidence in an attempt to implicate Plaintiff as the shooter;

    f.    Deliberately destroyed evidence and witness statements in an attempt to implicate Plaintiff as the shooter; and

    g.    Deliberately and coercively obtained false statements and identifications from witnesses including Darian Broomfield.

49. As a result of these violations, the Defendants mislead and misdirected the criminal prosecution of Plaintiff. Absent the misconduct, the prosecution of Plaintiff could not and would not have been pursued.

50. The Defendants continued to mislead and misdirect the criminal prosecution.

51. As a result of these violations, Plaintiff suffered without limitation violations of his constitutional rights, loss of liberty, monetary expenses, emotional distress, and other injuries.

52. The misconduct described in this Count I was objectively unreasonable and was undertaken with willful and/or reckless indifference to Plaintiff's constitutional rights.

    WHEREFORE, Plaintiff demands compensatory damages, jointly and severally from Defendants Detective Patrick McDonagh, Detective Patrick Deenihan and Detective Rolando

Rodriguez, and because these Defendants acted in a malicious, willful and/or wanton manner toward Plaintiff, for punitive damages, plus the costs of this action and whatever additional relief this Court deems equitable and just.

### Count II – Conspiracy
### 42 U.S.C. §§ 1985, 1986

1-47. Plaintiff incorporates and realleges paragraphs 1-47 as paragraphs 1-47 of Count II.

48. As described more fully above, the Defendant Officers, while acting individually, jointly, and in conspiracy with each other and other unnamed individuals, as well as under color of law and within the scope of their employment with Chicago Police Department, reached an understanding, engaged and continued to engage in a course of conduct, and otherwise jointly acted and/or conspired among and between themselves to falsely imprison Plaintiff and/or to continue that imprisonment, to maliciously prosecute Plaintiff and/or continue that prosecution, and to intentionally inflict severe emotional distress on Plaintiff.

49. Defendants' and their co-conspirators' overt acts, as set forth above, which were committed jointly and/or while conspiring together were with the knowledge and purpose of depriving Plaintiff of the equal protection of the laws and/or of equal privilege and immunities under the law.

50. The Defendants named above also deprived Plaintiff of his right to equal protection of the laws under the Fourteenth Amendment and 42 U.S.C. § 1985.

51. Additionally or alternatively, Defendants knowing that the above §1985 conspiracy to falsely arrest and prosecute Plaintiff was about to be committed, and having the power to prevent or aid in preventing the commission of the acts in furtherance of that conspiracy, neglected and/or refused so to do, in violation of 42 U.S.C. § 1986.

WHEREFORE, Plaintiff demands compensatory damages, jointly and severally from Defendants Detective Patrick McDonagh, Detective Patrick Deenihan and Detective Rolando Rodriguez, and, because these Defendants acted in a malicious, willful and/or wanton manner toward Plaintiff, for punitive damages, plus the costs of this action and whatever additional relief this Court deems equitable and just.

### Count III – Malicious Prosecution
### State Law Claim

1-47. Plaintiff incorporates and realleges paragraphs 1-47 as paragraphs 1-47 of Count III.

48. As described more fully above, the Defendant Detective Patrick McDonagh, Detective Patrick Deenihan and Detective Rolando Rodriguez, while acting individually, jointly, and in conspiracy with other unnamed individuals, as well as under color of law and within the scope of their employment, maliciously, willfully, and wantonly commenced and continued criminal proceedings against Plaintiff based on upon the following:

    a. Deliberately withheld exculpatory evidence including the video footage that either exonerated Plaintiff or implicated another individual as the shooter;

    b. Deliberately withheld exculpatory evidence including eyewitness statements that either exonerated Plaintiff or implicated another individual as the shooter;

    d. Deliberately provided information to witnesses that was beyond their personal knowledge in an attempt to bolster their statements including the alleged identity and location of the shooter;

    e. Deliberately fabricated reports and other evidence in an attempt to implicate Plaintiff as the shooter;

    f. Deliberately destroyed evidence and witness statements in an attempt to implicate Plaintiff as the shooter; and

    g. Deliberately and coercively obtained false statements and identifications from witnesses including Darian Broomfield.

49. Defendant Officers maliciously, willfully, and wantonly commenced and continued

criminal proceedings against Plaintiff while knowingly lacking probable cause to commence the criminal case.

50. The Defendant Officers continued to mislead and misdirect the criminal prosecution of Plaintiff during the pendency of his detainment at Cook County Department of Corrections and Illinois Department of Corrections.

51. The legal proceedings against Plaintiff were terminated in his favor in a manner indicative of innocence.

52. As a result of this violation, Plaintiff suffered without limitation violations of his state rights, loss of liberty, monetary expenses, emotional distress, and other injuries.

WHEREFORE, Plaintiff demands compensatory damages, jointly and severally from Defendants Detective Patrick McDonagh, Detective Patrick Deenihan and Detective Rolando Rodriguez and, because these Defendants acted in a malicious, willful and/or wanton manner toward Plaintiff, for punitive damages, plus the costs of this action and whatever additional relief this Court deems equitable and just.

### Count IV - Intentional Infliction of Emotional Distress
### State Law Claim

1-47. Plaintiff incorporates and realleges paragraphs 1-47 as paragraphs 1-47 of Count IV.

48. As described more fully above, the Defendant Detective Patrick McDonagh, Detective Patrick Deenihan and Detective Rolando Rodriguez, while acting individually, jointly, and in conspiracy with other unnamed individuals, as well as under color of law and within the scope of their employment, their conduct was extreme and outrageous and went beyond all bounds of human decency.

49. Defendant Officers participated in the extreme and outrageous conduct described above with the intention to inflict severe emotional distress upon Plaintiff or knew that there was a high

probability that their conduct would do so.

50. The Defendant Officers continued to mislead and misdirect the criminal prosecution of Plaintiff during the pendency of his detainment at Cook County Department of Corrections and Illinois Department of Corrections.

51. As a direct and proximate result of the extreme and outrageous conduct described above, Plaintiff suffered extreme emotional distress.

WHEREFORE, Plaintiff demands compensatory damages, jointly and severally from Defendants Detective Patrick McDonagh, Detective Patrick Deenihan and Detective Rolando Rodriguez, and, because these Defendants acted in a malicious, willful and/or wanton manner toward Plaintiff, for punitive damages, plus the costs of this action and whatever additional relief this Court deems equitable and just.

### Count V - Respondeat Superior
### State Law Claim

1-47. Plaintiff incorporates and realleges paragraphs 1-47 as paragraphs 1-47 of Count V.

48. As described more fully above, the Defendant Detective Patrick McDonagh, Detective Patrick Deenihan and Detective Rolando Rodriguez, while acting individually, jointly, and in conspiracy with other unnamed individuals, as well as under color of law and within the scope of their employment as members of the Chicago Police Departments.

49. The City of Chicago is liable as principal for all torts committed by their agents.

WHEREFORE, Plaintiff demands compensatory damages, jointly and severally from Defendants Detective Patrick McDonagh, Detective Patrick Deenihan and Detective Rolando Rodriguez, and, because these Defendants acted in a malicious, willful and/or wanton manner toward Plaintiff, for punitive damages, plus the costs of this action and whatever additional relief this Court deems equitable and just.

**Count VI - Indemnification**
**State Law Claim**

1-47.  Plaintiff incorporates and realleges paragraphs 1-47 as paragraphs 1-47 of Count VI.

48.  As described more fully above, the Defendant Detective Patrick McDonagh, Detective Patrick Deenihan and Detective Rolando Rodriguez, while acting individually, jointly, and in conspiracy with other unnamed individuals, as well as under color of law and within the scope of their employment as members of the Chicago Police Department.

49.  Should the Defendant Officers be found liable on any one of the federal claims alleged herein, pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9-102, Defendant City of Chicago is liable for any judgments for compensatory damages arising in this case from the actions of the Defendant Officers.

By: /s/ *Michael L. Gallagher*
Michael L. Gallagher

/s/ Damon M. Cheronis
Damon M. Cheronis

/s/Ryan J. Levitt
Ryan J. Levitt
Attorneys for Plaintiff

Michael L. Gallagher
TAXMAN, POLLOCK, MURRAY & BEKKERMAN, LLC
225 W. Wacker Drive, Suite 1650
Chicago, IL 60606
T: (312) 586-1700
F: (312) 586-1701
mgallagher@tpmblegal.com

Cheronis, Parente & Levitt LLC
140 S. Dearborn Street Suite 404
Chicago, IL 60603
(312) 663-4644
damon@cheronislaw.com
ryan@cheronislaw.com

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Jaron Green,<br><br>    Plaintiff,<br><br>v.<br><br>City of Chicago, a municipal corporation, by and through its authorized agents and employees, Detective Patrick McDonagh, Detective Patrick Deenihan, Detective Rolando Rodriquez, and Detective John Hanichak.<br><br>    Defendants. | Case No.: 1:23-cv-01841 |

## **AFFIDAVIT**

I, Michael L. Gallagher, state under oath:

1. I am an attorney associated with Taxman, Pollock, Murray & Bekkerman, LLC and am responsible for filing of the Complaint at Law in this matter.

2. The total of money damages sought by plaintiff does exceed $75,000.00, exclusive of interest and costs.

                          _____
                          Michael L. Gallagher

SUBSCRIBED and SWORN to before me
This **24th** day of **March,** 2023

_____
Notary Public

OFFICIAL SEAL
SONIA SANCHEZ
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:05/04/24

15